UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESA L. COLOSKE,                          Case No. 12-15198

              Plaintiff,                      Terrence G. Berg
v.                                           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Michael Hluchaniuk
                                             United States Magistrate Judge

              Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 18)**

## I.   PROCEDURAL HISTORY

    A.   Proceedings in this Court

On November 26, 2012, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims for a period of disability and disability insurance benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 13, 18).

    B.   Administrative Proceedings

Plaintiff filed the instant claims on May 3, 2010, alleging that she became

1

disabled beginning October 1, 2008 (Dkt. 11-2, Pg ID 54). The claim was initially

disapproved by the Commissioner on October 26, 2010. (Dkt. 11-2, Pg ID 53).

Plaintiff requested a hearing and on July 8, 2011, plaintiff appeared with a non-

attorney representative before Administrative Law Judge (ALJ) Raymond L.

Souza, who considered the case de novo. In a decision dated August 4, 2011, the

ALJ found that plaintiff was not disabled. (Dkt. 11-2, Pg ID 53-66). Plaintiff

requested a review of this decision. The ALJ's decision became the final decision

of the Commissioner when, after the review of additional exhibits,[1] the Appeals

Council, on September 20, 2012, denied plaintiff's request for review. (Dkt. 11-2,

Pg ID 43-47); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir.

2004).

    For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

---

    [1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

II.    **FACTUAL BACKGROUND**

A.    <u>ALJ Findings</u>

Plaintiff was 52 years of age at the time of the ALJ's decision and 49 years

old on the alleged onset date.  Plaintiff has past relevant work as a loan processor.

(Dkt. 11-2, Pg ID 55).  The ALJ applied the five-step disability analysis to

plaintiff's claim and found at step one that plaintiff had not engaged in substantial

gainful activity since the alleged onset date.  (Dkt. 11-2, Pg ID 55).  At step two,

the ALJ found that through the date last insured, the claimant had the following

severe impairments: disorders of the spine, bipolar disorder, and obesity.  (Dkt.

11-2, Pg ID 55).  At step three, the ALJ found no evidence that plaintiff's

combination of impairments met or equaled one of the listings in the regulations.

(Dkt. 11-2, Pg ID 56).  The ALJ concluded that plaintiff has the following residual

functional capacity:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform light work as defined in
> 20 CFR 404.1567(b) except able to lift 20 pounds
> occasionally, lift or carry up to 10 pounds frequently;
> stand or walk for approximately 6 hours per 8 hour work
> day, and sit for approximately 2 hours per 8 hour work
> day, with normal breaks; no climbing ladders, ropes or
> scaffolds; occasional climbing ramps or stairs;
> occasional stooping, crouching, kneeling and crawling;
> avoid use of hazardous machinery and exposure to
> unprotected heights; work is limited to simple as defined
> in the DOT as SVP levels 1 and 2, routine and repetitive

3

> tasks; only occasional decision making required and
> occasional changes in the work setting; no strict
> production quotas emphasis on a per shift rather than per
> hour basis.

(Dkt. 11-2, Pg ID 57-58). At step four, the ALJ found that plaintiff could not

perform her past relevant work as a loan processor. (Dkt. 11-2, Pg ID 64). At step

five, the ALJ concluded that there were a significant number of jobs in the

national economy that plaintiff could perform. Based on the foregoing, the ALJ

concluded that plaintiff was not under a disability from the claimed onset date

through the date last insured. (Dkt. 11-2, Pg ID 65).

B.    Plaintiff's Claims of Error

Plaintiff first claims that the ALJ's credibility determination was erroneous.

Plaintiff's medical records document her on-going struggle with the symptoms of

her bipolar disorder and schizoaffective disorder. Plaintiff is noted to have

difficulty concentrating and focusing. (Tr. 236). Moreover, plaintiff's medical

records document her struggle with symptoms of anxiety and depression despite

her continued medication consumption. As a result, plaintiff's mental health

treatment providers have worked to increase and add different medications to

alleviate her symptoms. (Tr. 287). As she reported to her consultative examiner,

plaintiff's mental health symptoms include anxiety, poor sleep, inability to

concentrate, racing thoughts, mood swings, depression, inappropriate laughter,

and audio hallucinations.  (Tr. 300).  Plaintiff suffered a mental breakdown on

October 1, 2008 (her alleged onset date) when she was presented to the hospital

with delusions and hallucinations.  (Tr. 145).  Although she was released the next

day, plaintiff again presented to the emergency room on October 2, 2008 with

increased delusions and hallucinations.  She was described as "rambling" and

believed that she was possessed by demons.  (Tr. 145-47).  After a few days in an

inpatient treatment facility, plaintiff was given mood stabilizing medications and

released.  (Tr. 147-49).  While hospitalized, plaintiff was diagnosed with bipolar

affective disorder, mixed with psychotic features, and assessed with a GAF score

of 30 at the time of admission and the highest of 50 in the past year.  (Tr. 145).

In February of 2009, plaintiff underwent an intake evaluation in order to

begin treatment at The Guidance Center.  During this visit, plaintiff explained that

she is fearful of being alone and being in the dark; sees things that are not there;

hears voices; is unable to leave her home; and suffers severe anxiety.  (Tr.

157-59).  The Guidance Center diagnosed the plaintiff with Schizoaffective

Disorder and assigned a GAF score of 46.  (Tr. 159).  Unfortunately, plaintiff lost

her medical coverage shortly after that and was forced to only attend therapy

sessions that she was able to pay for out-of-pocket.  However, she continued to

attend her medication management appointments in order to remain compliant

with her prescribed medications. (Tr. 160, 180).

5

Plaintiff argues that her gaps in treatment should not be held against her credibility in accordance with the provisions of SSR 82-59. First, plaintiff was unable to afford medical insurance at times. However, as her medical records note, despite being unable to afford treatment, she continued to attend her medication management sessions in order to remain compliant and avoid another mental deterioration. (Tr. 180). Moreover, as the Seventh Circuit has noted, "mental illness in general… may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment" and the court faulted the ALJ for failing to consider that possibility. *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006). Other circuits have also held that a failure to seek mental health treatment may be the result of mental illness rather than evidence that a mental impairment is not severe. *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989). "Indeed we have particularly criticized the use of lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Regennitter v. Comm'r of Soc. Sec.*, 166 F.3d 1294 at 1299, 1300 (9th Cir. 1999). Further, plaintiff points out that her medical records establish that she has deeply-held religious beliefs that affect the care that she is willing to receive. Following her intake at The Guidance Center, plaintiff is noted to have missed a few

6

appointments because she was seeking a counselor who was more "Christian oriented." (Tr. 206). When she was unable to find a suitable Christian-specific counselor, she returned for treatment at The Guidance Center. *Id.*

Plaintiff also argues that, in addition to committing reversible error in failing to properly consider plaintiff's subjective symptoms, the ALJ also improperly used her daily activities to undermine her credibility. Plaintiff asserts that it has been determined in previous cases before the 6th Circuit that, "some fairly minimal daily activities are not comparable to typical work activities." *Rogers v. Comm'r of Soc. Sec.*, 486 F. 3d. 234, 248-49 (6th Cir. 2007). Further, this Court has ruled that there is a profound difference between an individual with a sedentary lifestyle and one having a sedentary RFC. *Stennett v. Comm'r of Soc. Sec.*, 476 F.Supp.2d 665, 672 (E.D. Mich. 2007). In this decision, the ALJ determined that plaintiff only had a mild restrictions, remarking, "the claimant reported that she watches a lot of television and occasionally does some volunteer work stuffing envelopes. She also watches her granddaughter a couple of times each week, usually when she is asleep. She takes care of her cat. The claimant is able to take care of her personal grooming and hygiene without reminders. She is able to prepare simple meals and perform household chores including laundry, vacuuming and dusting. She drives regularly to obtain groceries and pet food. In October, 2010, she was able to display age appropriate autonomy. In activities of

daily living, the claimant has a mild restriction."  (Tr. 15).  The Social Security

Administration and the 6th Circuit have made clear that the ability to perform

minimal daily activities does not equate to the ability to perform work activities on

a regular basis, 40 hours a week.

Second, plaintiff argues that the ALJ erroneously found that plaintiff was

able to work at step five.  In his RFC, the ALJ found that plaintiff retained the

ability to perform light work with occasional climbing of stairs and ramps,

stooping, balancing, and crawling; no climbing of ropes or ladders; no

concentrated exposure to hazards or moving machinery; simple, SVP 1 and 2 jobs;

repetitive tasks; occasional decision making required and occasional changes in

the work setting; no strict production quotas emphasis on a per shift rather than

per hour basis.  (Tr. 17).  According to plaintiff, this assessment falls short of

including all of her limitations.  In reaching a decision, the ALJ has a duty to

include those limitations in his RFC assessment, which is defined as "the most you

can still do despite your limitations."  20 C.F.R. § 416.945.  According to 20

C.F.R. § 404.1545, an ALJ must "first assess the nature and extent of your mental

limitations and restrictions and then determine your residual functional capacity

for work activity on a regular and continuing basis."  In particular, "a limited

ability to carry out certain mental activities, such as limitations in understanding,

remembering, and carrying out instructions, and in responding appropriately to

8

supervision, co-workers, and work pressures in a work setting, may reduce your

ability to do past work and other work." 20 C.F.R. 404.1545.  Moreover, SSR

85-15 explains, "because response to the demands of work is highly

individualized, the skill level of a position is not necessarily related to the

difficulty an individual will have in meeting the demands of the job.  A claimant's

condition may make performance of an unskilled job as difficult as an objectively

more demanding job."  Further, this ruling adds, "any impairment-related

limitations created by an individual's response to demands of work, however, must

be reflected in the RFC assessment."  SSR 85-15.  Plaintiff contends that, in light

of the ALJ's failure to include the limitations of her depression in his RFC, the

decision is not supported by substantial evidence and cannot stand.  According to

plaintiff, as described above, her medical records reveal that she would be unable

to perform the mental demands of even unskilled work.  SSR 85-15.

In support of these reported symptoms, plaintiff's psychiatrist at The

Guidance Center opined that plaintiff would not be able to perform the mental

demands of any type of employment in the national economy.  In fact, Dr. Kubrack

reported that plaintiff would be moderately limited in her ability to: remember

work-like procedures, understand and remember short and simple instructions;

carry out moderately detailed instructions; maintain attention and concentration

for short periods of time; work in coordination with, or proximity to, others

without being distracted by them; and complete a normal workday and work week without interruptions from psychologically based symptoms. (Tr. 164-165). He also opined that plaintiff would have a marked ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods of time; and the ability to travel in unfamiliar places or use public transportation. (Tr. 364-65).

However, in his decision, the ALJ failed to give proper weight to the opinion of Dr. Kubrack because "The opinion of Dr. Kubrak regarding the claimant's mental capabilities to perform work-related activities is given limited weight because it is not supported by his own objective clinical findings. The claimant was following prescribed treatment which was addressing her symptoms." (Tr. 22). According to plaintiff, Dr. Kubrak's medical notes document plaintiff's on-going mental health symptoms despite her treatment. As a result, plaintiff's mental health treatment providers have worked to increase and add different medications to alleviate her symptoms. (Tr. 287). As she reported to the consultative examiner, plaintiff's on-going mental health symptoms include anxiety, poor sleep, inability to concentrate, racing thoughts, mood swings, depression, inappropriate laughter, and audio hallucinations. (Tr. 300). Further, plaintiff's medical evidence clearly documents her unfortunate decline and deterioration in October of 2008, plaintiff's alleged onset date. According to

10

plaintiff, the failure of the ALJ to create an accurate hypothetical which encompasses all of her limitations, does not constitute "harmless error" and a reversal and immediate award of benefits is appropriate in this case. The ALJ presented his inaccurate RFC to the VE and ultimately relied on these findings to make his decision that plaintiff was not disabled. (Tr. 24). Plaintiff's limitations are not accommodated by the RFC created by the ALJ. Therefore, plaintiff maintains that because the ALJ relied on the RFC to make the final determination that plaintiff was not disabled, this decision cannot stand. (Tr. 24). Thus, plaintiff contends that the ALJ's decision is not supported by "substantial evidence" and therefore must be reversed, or, at a minimum, remanded for further proceedings.

### C. The Commissioner's Motion for Summary Judgment

According to the Commissioner, one strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record including the degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources. SSR 96-7p, 1996 WL 374186 at *5. Here, the ALJ partially credited plaintiff's testimony regarding her physical and mental limitations, as evidenced by the ALJ's residual functional capacity recognizing that plaintiff could perform less than a full range of light work. (Tr. 16-17). The Commissioner contends, however, that the ALJ reasonably found that

11

plaintiff's allegations of work-preclusive limitations were "significantly inconsistent" with and unsupported by the record or objective medical evidence. (Tr. 17-23).

The ALJ cited in detail plaintiff's mental health treatment records. The ALJ recognized that plaintiff was admitted briefly to the Heritage Hospital Psychiatric Inpatient Unit on October 2, 2008, the day after her alleged onset of disability. (Tr. 18). Following this incident, the ALJ noted that plaintiff did well with treatment, including mediation. (Tr. 18-23). In December 2008, plaintiff reported that with medication she no longer exhibited any signs of the psychosis she had in October 2008. (Tr. 242). The ALJ further noted plaintiff's contemporaneous statements to treatment providers were inconsistent with allegations of work-preclusive limitations. (Tr. 19). For example, in March 2009, plaintiff reported good family support, church activities, and active support at church. (Tr. 19, citing 170). She was beginning Bible study and was active in the women's group at church. (Tr. 19, citing 170). Plaintiff also reported that she was able to care for her personal needs, very organized, able to perform all chores, use a computer, and garden. (Tr. 19, citing 170). She was able to handle her personal finances, conduct personal business, and was good with budgets. (Tr. 19, citing 170). The ALJ also noted that plaintiff continued to report that she was responding very well to medication, denied manic or psychotic symptoms, and had

no adverse side effects. (Tr. 19, citing Tr. 172-79). The ALJ reasonably found this treatment inconsistent with allegations of work-preclusive mental impairment. (Tr. 22).

According to the Commissioner, while plaintiff argues that the ALJ found gaps in her treatment history weighed against her credibility, plaintiff offers no citation to the ALJ's decision or other citation to indicate the ALJ held any gap in treatment against her. To the contrary, the ALJ noted that plaintiff received treatment and that she did well with treatment. (Tr. 19, 22). The ALJ further noted that plaintiff reported to treatment professionals that her medication was working and that she denied any hallucinations. (Tr. 22). The ALJ did note the absence of any significant longitudinal treatment history contrary to an ability to work in job that satisfied the requirements of the residual functional capacity. (Tr. 22). According to the Commissioner, this statement about a longitudinal treatment did not suggest there were gaps in plaintiff's treatment, only that the treatment she received was consistent with the ALJ's residual functional capacity. (Tr. 22).

Plaintiff also cites to deeply held religious beliefs. According to the Commissioner, there was nothing in the ALJ's decision to suggest that the ALJ weighed plaintiff's religious beliefs against her and plaintiff provides no citation to any portion of the decision to suggest otherwise.

Plaintiff also contests the ALJ's consideration of daily activities in assessing

13

her credibility.  The Commissioner contends, however, that it was reasonable for the ALJ to consider plaintiff's daily activities in evaluating her alleged symptoms and weighing whether her alleged symptoms were consistent with her daily activities.  20 C.F.R. § 404.1529.  The Commissioner maintains that the ALJ reasonably found plaintiff's daily activities inconsistent with her allegations that she was unable to work because of symptoms of depression and "uneasiness" around strange people due to her visual and auditory hallucinations.  (Tr. 22).  As the ALJ noted, plaintiff reported considerable daily activities to her treatment providers.  (Tr. 19, 22).  She was active in her church, participated in a Bible study, and was active in the women's group at church.  (Tr. 19, citing 170).  Plaintiff also reported that she was able to care for her personal needs, was very organized, was able to perform all chores, to use a computer, and to garden.  (Tr. 19, citing 170).  She was able to handle her personal finances, to conduct personal business, and was good with budgets.  (Tr. 19, citing 170).  According to the Commissioner, the ALJ reasonably found these stated activities inconsistent with allegations of work-preclusive mental limitations and consistent with the ALJ's residual functional capacity finding.

In addition, the Commissioner contends that the ALJ found plaintiff's receipt of unemployment benefits inconsistent with her allegations of disability. (Tr. 23).  The ALJ noted that in order to receive unemployment benefits an

14

individual must attest that they are available to perform full time work.  (Tr. 23).
The ALJ reasonably found such an attestation, while not dispositive of the issue of
disability, weighed against her allegations of disability.  (Tr. 23).

According to the Commissioner, while plaintiff may disagree with the ALJ,
the ALJ's credibility findings were well within the zone of reasonable choices.
*See Mullen v. Bowen*, 800 F.2d 535, 595 (6th Cir. 1986).  The substantial evidence
standard presupposes that there is a zone of choice within which the decision
maker can go either way, without interference by the courts.  *Blakely v. Comm'r of
Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).  Because the ALJ made a reasoned
and reasonable decision, the Commissioner maintains that the ALJ's assessment of
plaintiff's credibility should be afforded its due deference.

Plaintiff purportedly contests the ALJ's reliance on vocational expert
testimony, but the Commissioner contends that she only argues that the ALJ did
not properly evaluate her residual functional capacity (i.e., what she can still do
despite her limitations). (Dkt. 13, pp. 9-12); 20 C.F.R. § 404.1545.  The ALJ
received and relied on vocational expert testimony at step five of the five-step
sequential evaluation.  Residual functional capacity is determined between steps
three and four of the sequential evaluation.  Plaintiff bore the burden of proving
the existence and severity of limitations caused by her impairments up through
step four, which included the determination of her residual functional capacity.

15

The ALJ need not have included unsubstantiated allegations into the hypothetical question posed to the vocational expert. *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ . . . is required to incorporate only those limitations accepted as credible by the finder of fact."). Ultimately, the Commissioner contends that plaintiff failed to meet her burden to show that more restrictive limitations were warranted.

Essentially, plaintiff argues the ALJ should have included additional limitations related to her depression. (Dkt. 13, p. 10). She argues that additional limitations were warranted based on her medical records and the opinion of her treating psychiatrist, Dr. Kubrack. (*Id.*, pp. 10-12). The ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity. 20 C.F.R. § 404.1545; *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ's determination of a claimant's residual functional capacity is a legal decision rather than a medical one. *See* 20 C.F.R. § 404.1527(e); SSR 96-5p, 1996 WL 374183, at *4. Here, according to the Commissioner, the ALJ reasonably evaluated the medical records and the opinions of Dr. Kubrak and consultative examining psychologist, Hugh D. Bray, Ph.D., to find plaintiff capable of work. The Commissioner again points out that the ALJ recognized that plaintiff was briefly

16

hospitalized in early October 2008 for psychiatric issues, including complaints of auditory and visual hallucinations. (Tr. 18). Following this single hospitalization, the ALJ noted that she responded well to conservative mental health treatment. (Tr. 18-23). As the ALJ noted, plaintiff continued to report to treatment providers that she was responding well to the medication, that her symptoms were under excellent control, and that she had no breakthrough manic or psychotic symptoms. (Tr. 19, citing Tr. 172-79). She denied any delusions. (Tr. 172-79). She also said she had no adverse side effects from the medication. (Tr. 19, citing Tr. 172-79). Indeed, she similarly reported to consultative examining psychologist, Dr. Bray, that medication seemed to control her mood swings and she denied any auditory or visual hallucinations. (Tr. 303-04).

According to the Commissioner, the ALJ reasonably gave significant weight to the examination and opinion of consultative psychological examiner, Dr. Bray. (Tr. 20). Dr. Bray examined plaintiff in October 2010. (Tr. 300-06). The ALJ noted Dr. Bray's examination results as well as statements made by plaintiff during the examination. (Tr 20). The mental status exam revealed plaintiff's contact with reality was intact; her self-esteem was diminished; but, she displayed no unusual or bizarre behaviors. (Tr. 303). Her insight and judgment were good. (Tr. 303). In answering Dr. Bray's questions, plaintiff was cooperative and verbally responsive, and her stream of mental activity was talkative, responsive,

17

spontaneous, logical, organized, and goal directed.  (Tr. 303).  Again, she denied

any visual or auditory hallucinations and admitted her medications were working

well.  (Tr. 303).  She was able to repeat seven numbers forward and six numbers

backwards and recall three objects out of three objects after a three minute time

delay.  (Tr. 304).  She displayed a good fund of information and was able to

perform simple calculations.  (Tr. 304).  Throughout the examination, Dr. Bray

found plaintiff's concentration, attention, persistence, and effort were appropriate.

(Tr. 304).  Dr. Bray diagnosed bipolar disorder, mixed type with a history of

psychotic features, and assigned a Global Assessment of Functioning score of

55-60.  (Tr. 305).  Following the examination, Dr. Bray opined that plaintiff was

only mildly impaired in her ability to relate to others including fellow workers and

supervisors; to understand, remember, and carry out tasks; and to maintain

attention, concentration, persistence, pace, and effort.  (Tr. 305).  Dr. Bray further

opined that plaintiff's ability to withstand stress and pressure associated with

day-to-day work activities was moderately impaired.  (Tr. 305).  According to the

Commissioner, the ALJ reasonably gave these opinions significant weight and

these opinions are consistent with the ALJ's residual functional capacity finding.

Thus, the Commissioner contends that Dr. Bray's opinions and his examination

results provide substantial evidence to support the ALJ's decision.

    The Commissioner also contends that the ALJ reasonably weighed and gave

limited weight to the opinion of treating psychiatrist, Dr. Kubrak.  (Tr. 21-22).  Dr. Kubrak completed a Mental Residual Functional Capacity form in July 2011, after the hearing.  (Tr. 366).  The Commissioner also points out that plaintiff had submitted another Mental Residual Functional Capacity form from Dr. Kubrak, but admitted at the hearing that she had actually completed the form.  (Tr. 39-40). The ALJ thoroughly recited Dr. Kubrak's opinion.  (Tr. 21-22).  He found her "not significantly limited" and "moderately" limited in a number of functional areas and "markedly" limited in the following areas: in ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods of time; and ability to travel in unfamiliar places or use public transportation.  (Tr. 364-68).  The ALJ gave limited weight to Dr. Kubrak's opinions as they were inconsistent with and unsupported by his treatment notes.  (Tr. 22).  The Commissioner again points out that plaintiff repeatedly reported that her medications were working well at relieving her symptoms.  (Tr. 172-78).  Those statements were made to Dr. Kubrak.  (Tr. 172-78).  Thus, the ALJ reasonably found Dr. Kubrak's contemporaneous treatment notes failed to support and were inconsistent with an opinion of work-preclusive limitations.

According to the Commissioner, while plaintiff may have wished for a different result or disagreed with the ALJ's decision, the ALJ's residual capacity

19

finding was within the zone of reasonable choices.  Moreover, the Commissioner points out that  the ALJ need not have included unsubstantiated complaints in his hypothetical question to the vocational expert.  Because the ALJ made a reasoned and reasonable decision supported by substantial evidence, the Commissioner maintains that his decision should stand.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec.

21

Rul. 96-7p, 1996 WL 374186, *4.

      If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

      The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of

22

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

    B.   <u>Governing Law</u>

    The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who

23

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.

> Step Five: Even if the claimant is unable to perform his

24

> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

      C.    <u>Analysis and Conclusions</u>

      Plaintiff contends that the ALJ failed to adequately assess her credibility

concerning the intensity and persistence of her symptoms associated with her

mental health problems.  As the relevant Social Security regulations make clear,

however, a claimant's "statements about [his] pain or other symptoms will not

alone establish that [she is] disabled."  20 C.F.R. § 404.1529(a).  Instead, the Sixth

Circuit has repeatedly held that "subjective complaints may support a finding of

disability only where objective medical evidence confirms the severity of the

alleged symptoms."  *See Workman v. Comm'r of Soc. Sec.*, 105 Fed.Appx. 794,

801 (6th Cir. 2004).

      "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass

upon the credibility of the witnesses and weigh and evaluate their testimony."

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001), quoting *Myers*

*v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972).  A court is to accord an

"ALJ's determinations of credibility great weight and deference particularly since

the ALJ has the opportunity, which [a court does] not, of observing a witness's

demeanor while testifying."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th

Cir. 2003).  The court "may not disturb" an ALJ's credibility determination

"absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.

2001).  However, an ALJ who rejects a claimant's testimony must "clearly state"

the reasoning for doing so. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994);

*see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007) (an

ALJ's credibility determination regarding subjective complaints must be

reasonable and supported by substantial evidence).  "[W]here an ALJ's reasoning

underlying his decision to discount a claimant's credibility is partially but not fully

flawed, remand may nonetheless be appropriate." *Kerr v. Comm'r of Soc. Sec.*,

2013 WL 388987, at *16 (E.D. Mich. 2013), citing *Allan v. Comm'r of Soc. Sec.*,

2011 WL 2670021 (E.D. Mich. 2011), citing *Ford v. Astrue*, 518 F.3d 979, 982-83

(8th Cir. 2008), *adopted by* 2013 WL 388176 (E.D. Mich. 2013).

In this case, the ALJ's credibility determination is thorough, detailed, and

amply supported by the record.  The ALJ concluded that the medical evidence

weighed against plaintiff's allegations of disabling mental illness.  The record

indicated that she was doing well in her treatment program as long as she adhered

to the medication routine and attended her appointments.  The ALJ also pointed

out that plaintiff herself denied hearing any voices.  The ALJ also pointed to her

current living situation, her daily activities, household chores, and regular church

attendance as being supportive of her ability to work.  The ALJ also pointed out

that the RFC addresses the demands that might exacerbate her symptoms and well

27

as considering their duration, frequency and intensity.  The ALJ also found that
plaintiff was able to maintain eye contact and respond appropriately to questions
during the hearing.  The ALJ also found it significant that plaintiff received
unemployment benefits in 2009, after she claimed to have been disabled, which
means she represented herself to the state as being able to work, which bears
negatively on her credibility.  The ALJ also noted that plaintiff's treatment was
routine and conservative, which also undermines her claim of disability.

Plaintiff does not directly attack the ALJ's treatment of Dr. Kubrak's
opinions, but rather, she argues, in a single sentence, that the ALJ improperly did
not fully credit her testimony, which is supported by the medical records.  In the
view of the undersigned, plaintiff has not sufficiently raised an argument that the
opinion of her treating physician was not appropriately evaluated by the ALJ.  It is
not sufficient for a party to mention a possible argument "in a most skeletal way,
leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d
989, 995-96 (6th Cir. 1997).  Indeed, a court need not make a party's case by
scouring the various submissions to piece together appropriate arguments. *Little v.
Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995).   And, the court is not
obligated to make a plaintiff's case for her or to "wade through and search the
entire record" for some specific facts that might support her motion.  *InterRoyal
Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).  Here, plaintiff offers no

28

explanation as to how the limitations set forth on the questionnaire completed by Dr. Kubrak were not fully accommodated by the ALJ's RFC, which, as to plaintiff's mental impairments, was quite limited.  However, for all of the reasons outlined above, the undersigned concludes that the ALJ's credibility determination is fully supported by substantial evidence and should not be disturbed.

As to plaintiff's claim that the ALJ's step five finding is improper, the undersigned agrees that plaintiff is attempting to refute the RFC finding via a purported step five error.  Plaintiff points to her diagnoses and contends that the ALJ failed to account for them in the RFC.  Plaintiff's "diagnoses," in and of themselves, are not evidence that she is limited in any particular way.  Simply because plaintiff suffers from a certain condition or carries a certain diagnosis does not equate to disability or a particular RFC.  Rather, the residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from–though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002).  "A claimant's severe impairment may or may not affect his or her functional capacity to do work.  One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004).  "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities]

29

depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). Thus, the mere existence of any condition from which plaintiff may have suffered does not necessarily establish any functional limitation or disability. Again, plaintiff half-heartedly attempts to say that the ALJ failed to give due deference to Dr. Kubrak's opinion, but again does not explain how the ALJ's RFC does not accommodate plaintiff's mental limitations. Simply put, plaintiff has not established that the ALJ failed to accommodate all of the limitations found to be credible and supported by substantial evidence in the record. For these reasons, plaintiff's second claim of error should be rejected.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  February 6, 2014                     s/Michael Hluchaniuk
                                            Michael Hluchaniuk
                                            United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on <u>February 6, 2014</u> I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Kelie C. Schneider, Thomas J. Bertino, Meghan O'Callaghan, William L. Woodard, AUSA, and the Commissioner of Social Security</u>.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov